IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN F. STROHN, Individually, as Special Administrator of the ESTATE OF STEVEN C. STROHN, Deceased, and as Trustee for the Next of Kin of STEVEN C. STROHN, Decedent, )<br><br>Plaintiff, )<br><br>vs. )<br><br>XCEL ENERGY INC., NORTHERN STATES POWER COMPANY, NORTHERN STATES POWER COMPANY-MINNESOTA, NORTHERN STATES POWER COMPANY-WISCONSIN, HOME DEPOT U.S.A., INC., XPO LOGISTICS, INC., GARAN, LLC, and PLOOG ELECTRIC, INC., )<br><br>Defendants. ) | Case No._____<br><br><br><br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, Susan F. Strohn, Individually, as Special Administrator of the Estate of Steven C. Strohn, Deceased, and as Trustee for the Next of Kin of Steven C. Strohn, Decedent, by and through her counsel of record, and for her Complaint against Defendants, Xcel Energy Inc., Northern States Power Company, Northern States Power Company-Minnesota, Northern States Power Company-Wisconsin, Home Depot U.S.A., Inc., XPO Logistics, Inc., Garan, LLC, and Ploog Electric, Inc. (collectively, "Defendants"), states and alleges as follows:

## THE PARTIES

1.    Plaintiff, Susan F. Strohn ("Mrs. Strohn"), is a resident of Omaha, Douglas County, Nebraska. Mrs. Strohn is the Special Administrator of the Estate of Steven C. Strohn and is the Trustee for the Next of Kin of Steven C. Strohn, Decedent. At all times material herein, Mr. and Mrs. Strohn were married to each other as husband and wife.

2.    Defendant, Xcel Energy Inc. ("Xcel Energy"), is a Minnesota corporation, with its principal place of business located in Minneapolis, Hennepin County, Minnesota.

3.      Defendant, Northern States Power Company ("NSPC"), is a Minnesota corporation, with its principal place of business located in Minneapolis, Hennepin County, Minnesota.

4.      Defendant, Northern States Power Company-Minnesota ("NSPC-M"), is a Minnesota corporation, with its principal place of business located in Minneapolis, Hennepin County, Minnesota.

5.      Defendant, Northern States Power Company-Wisconsin ("NSPC-W"), is a Wisconsin corporation, with its principal place of business located in Eau Claire, Eau Claire County, Wisconsin.

6.      Upon information and belief, Xcel Energy owns NSPC, NSPC-M, and NSPC-W.

7.      Defendants, Xcel Energy Inc., Northern States Power Company, Northern States Power Company-Minnesota, and Northern States Power Company-Wisconsin, are hereinafter collectively referred to in Plaintiff's Complaint as "Xcel." Any reference to "Xcel" hereinafter in Plaintiff's Complaint does and shall include all four of these named Defendants.

8.      Defendant, Home Depot U.S.A., Inc. ("Home Depot"), is a Delaware corporation, with its principal place of business located in Atlanta, Fulton County, Georgia.

9.      Defendant, XPO Logistics, Inc. ("XPO"), is a Delaware corporation, with its principal place of business located in Greenwich, Fairfield County, Connecticut. XPO is a transportation and logistical services company.

10.     Defendant, Garan LLC ("Garan"), is a Montana limited liability company, with its principal place of business located in Bozeman, Gallatin County, Montana. Garan is a freight shipping and trucking company.

11.     Defendant, Ploog Electric, Inc. ("Ploog Electric"), is a Minnesota corporation, with its principal place of business located in Madison Lake, Blue Earth County, Minnesota.

## JURISDICTION, VENUE, AND APPLICABLE LAW

12.     This Court has subject-matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

13.   This Court has personal jurisdiction over Defendants pursuant to the Fourteenth Amendment to the Constitution of the United States of America and MINN. STAT. § 543.19.

14.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

15.   Some or all of the laws of the State of Nebraska apply to Mrs. Strohn's causes of actions and claims against Defendants.

## BACKGROUND

### A. Purchase and Delivery of Electric Range Stove.

16.   On or about June 17, 2016, Mr. and Mrs. Strohn (collectively, "Strohns") purchased an electric range stove from Home Depot (hereafter, "Electric Stove").

17.   Home Depot, XPO, Garan, and/or their agents and/or employees supplied the Electric Stove to the Strohns.

18.   The Strohns purchased the Electric Stove for a cabin they owned at 24855 French Drive, Cleveland, Le Sueur County, Minnesota, 56017 (hereafter, "Strohn Cabin").

19.   The Strohns purchased the Electric Stove to replace the gas stove in the Strohn Cabin.

20.   On or about July 1, 2016, Home Depot, XPO, Garan, and/or their agents and/or employees supplied and delivered the Electric Stove to the Strohns and the Strohn Cabin.

21.   During this delivery, Home Depot, XPO, Garan, and/or their agents and/or employees entered the Strohn Cabin and disconnected and removed the gas stove from the Strohn Cabin.

22.   In order to remove the gas stove from the cabin, Home Depot, XPO, Garan, and/or their agents and/or employees disconnected the gas stove from a gas line in the Strohn Cabin (hereafter, "Gas Line").

23.   Home Depot, XPO, Garan, and/or their agents and/or employees failed to cap, seal, close, and/or otherwise neutralize the Gas Line after they disconnected the gas stove from the Gas Line.

24.   During the delivery of the Electric Stove to the Strohn Cabin, Home Depot, XPO, Garan, and/or their agents and/or employees also brought the Electric Stove into

the Strohn Cabin and installed it where the gas stove had been previously located, hiding and/or obscuring the Gas Line from view.

### B. Installation of Electrical Outlet in Strohn Cabin.

25.    On or about August 1, 2016, Ploog Electric and/or its agents and/or employees went to the Strohn Cabin and performed electrical work for the Strohns and the Strohn Cabin, including the installation of an electrical outlet inside the Strohn Cabin.

26.    Ploog Electric and/or its agents and/or employees installed the electrical outlet so that the Electric Stove could be hooked up to electricity and could be operated in the Strohn Cabin.

27.    Ploog Electric and/or its agents and/or employees installed the electrical outlet right next to the Gas Line.

28.    While at the Strohn Cabin, Ploog Electric and/or its agents and/or employees saw and/or discovered or should have seen and/or discovered that the Gas Line was not capped, sealed, closed, and/or otherwise neutralized.

29.    However, Ploog Electric and/or its agents and/or employees failed to cap, seal, close, and/or otherwise neutralize the Gas Line.

30.    While Ploog Electric and/or its agents and/or employees were at the Strohn Cabin, they connected the Electric Stove to the electrical outlet.

31.    Ploog Electric and/or its agents and/or employees positioned the Electric Stove so that it hid and/or obscured the Gas Line from view.

### C. The Fire at the Strohn Cabin.

32.    On or about May 20, 2017, Mr. Strohn and his biological mother, Joann L. Strohn, were at the Strohn Cabin.

33.    While Mr. Strohn and his mother were at the Strohn Cabin, a fire occurred in the Strohn Cabin.

34.    The fire severely burned, injured, and ultimately resulted in the death of Mr. Strohn and Joann L. Strohn.

35.    The fire also caused substantial property damage, including, but not limited to, property damage to the Strohn Cabin and damage to personal property inside the Strohn Cabin.

36.     The fire was caused by natural gas that came out of the uncapped Gas Line in the Strohn Cabin.

### D. The Natural Gas that Caused the Fire.

37.     Xcel is an energy company that is in the business of designing, manufacturing, selling, transmitting, and distributing energy products, including natural gas, to customers in several states, including Minnesota.

38.     At all material times, Xcel sold, distributed, and delivered the natural gas that caused the fire in the Strohn Cabin to the Strohns and the Strohn Cabin.

39.     Xcel and/or its agents and/or employees designed and manufactured the natural gas that caused the fire in the Strohn Cabin.

40.     Xcel and/or its agents and/or employees also distributed, supplied, transmitted, and delivered the natural gas to the Strohn Cabin that caused the fire in the Strohn Cabin.

41.     Natural gas is an odorless, colorless, and tasteless gas.

42.     As a result, companies like Xcel that distribute natural gas to customers are required to ensure that there is an odorant to the natural gas that they produce, transmit, sell, and distribute so that a natural gas leak may be detected by humans.

43.     Xcel and/or its agents and/or employees was responsible for adding, mixing, and/or designing, and/or otherwise ensuring there was, a proper and sufficient odorant to the natural gas that Xcel and/or its agents and/or employees designed, manufactured, distributed, transmitted, and supplied to the Strohn Cabin.

44.     The natural gas that came out of the uncapped Gas Line in the Strohn Cabin and caused the fire was odorless and could not be smelled by Mr. Strohn and Joann L. Strohn.

45.     The natural gas was odorless and could not be smelled because Xcel and/or its agents and/or employees did not properly add, mix, and/or design, and/or otherwise ensure there was, a proper and sufficient odorant to the natural gas.

<u>**FIRST CAUSE OF ACTION:**</u>
<u>**WRONGFUL DEATH CLAIM AGAINST ALL DEFENDANTS**</u>

46.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 45 of her Complaint as if fully set forth again.

47.     Mrs. Strohn's first cause of action against Defendants is a wrongful death claim against Defendants.

48.     With regard to Mrs. Strohn's wrongful death claim against Defendants, she hereby asserts and incorporates herein the following 12 counts / claims / legal theories against the particular Defendant(s) to which such counts / claims / legal theories are directed.

49.     The damages Mrs. Strohn seeks against such Defendants on her wrongful death claim are identified in Paragraphs 125 and 126, including all subparagraphs therein, of her Complaint and are incorporated herein by this reference.

## COUNT ONE:
## STRICT LIABILITY DESIGN DEFECT CLAIM AGAINST XCEL

50.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 49 of her Complaint as if fully set forth again.

51.     Xcel and/or its agents and/or employees had a duty to, but failed to, use reasonable care to design the natural gas so that it was not in a defective condition, unreasonably dangerous to buyers, users, and those exposed to the natural gas, including Mr. Strohn.

52.     Due to the actions and/or inactions of Xcel and/or its agents and/or employees, the natural gas that caused the fire was in a defective condition and was unreasonably dangerous when the natural gas left the control of Xcel and/or its agents and/or employees.

53.     At all material times, including when the fire occurred, Mr. Strohn and the Strohn Cabin were using the natural gas as intended and in a way that Xcel and/or its agents and/or employees did anticipate or foresee and/or could have reasonably anticipated or foreseen.

54.     The design defects in the natural gas directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

## COUNT TWO:
## STRICT LIABILITY MANUFACTURING DEFECT CLAIM AGAINST XCEL

55.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 54 of her Complaint as if fully set forth again.

56.    Due to the actions and/or inactions of Xcel and/or its agents and/or employees, the natural gas that caused the fire in the Strohn Cabin (a) departed and/or differed from its intended design, specifications, and/or plan in that it did not contain an odorant and/or was not properly odorized as intended and/or (b) failed to properly perform in the anticipated or specified way in which Xcel and/or its agents and/or employees intended it to perform.

57.    The manufacturing defects in the natural gas directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

## COUNT THREE:
## STRICT LIABILITY FAILURE TO WARN CLAIM AGAINST XCEL

58.    Mrs. Strohn hereby reincorporates Paragraphs 1 through 57 of her Complaint as if fully set forth again.

59.    Xcel had a duty to warn users of its natural gas, including the Strohns and the Strohn Cabin, about the dangers of its natural gas, including, but not limited to, the dangers of leaking natural gas, the dangers of using that product when it did not have an odorant and/or was unable to be detected, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas.

60.    Xcel knew and/or had reason to know that the natural gas that caused the fire was dangerous and would be dangerous and create an unreasonable risk of injury if it leaked, if it did not have an odorant to it, if it was unable to be detected, and if certain circumstances occurred that prevented a natural gas leak from being detected.

61.    Xcel sold and distributed the natural gas that caused the fire to the Strohns and the Strohn Cabin without providing adequate and/or proper warnings and/or instructions about the natural gas, including, but not limited to, adequate and/or proper warnings and/or instructions about the dangers of leaking natural gas, the dangers of natural gas if it does not have an odorant or is unable to be detected, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas.

62.     Xcel knew and/or should have reasonably foreseen that these warning and/or instruction defects would cause damage and injury to users of its natural gas, including the Strohns and the Strohn Cabin.

63.     Xcel's failure to warn and/or instruct about the dangers of its natural gas directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

**COUNT FOUR:**
**STRICT LIABILITY POST-SALE FAILURE TO WARN CLAIM AGAINST XCEL**

64.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 63 of her Complaint as if fully set forth again.

65.     After Xcel sold, distributed, and delivered the natural gas that caused the fire in the Strohn Cabin to the Strohns and the Strohn Cabin, Xcel had a continuing duty to warn the Strohns and the Strohn Cabin about the dangers associated with such natural gas.

66.     After Xcel sold, distributed, and delivered such natural gas to the Strohns and the Strohn Cabin, Xcel and/or its agents and/or employees knew, and/or should have known, for a long period of time about the dangers of its natural gas, including, but not limited to, the dangers of leaking natural gas, the dangers of using that product when it did not have an odorant and/or was unable to be detected, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas. Xcel and/or its agents and/or employees knew, or should have known, that such danger(s) and/or problem(s) could cause a fire, explosion, and/or other catastrophic damages and injuries.

67.     After Xcel sold, distributed, and delivered such natural gas to the Strohns and the Strohn Cabin, Xcel and/or its agents and/or employees knew, and/or should have known, for a long period of time that such natural gas was not, and/or was not likely to be, properly and/or sufficiently odorized and that such problem(s) could cause a fire, explosion, and/or other catastrophic damages and injuries.

68.     Xcel and/or its agents and/or employees knew and/or should have known that such dangers and problems were hidden and/or unlikely to be discovered by users of its natural gas, including the Strohns and the Strohn Cabin.

69.     Although Xcel and/or its agents and/or employees knew and/or should have known about such dangers and problems, Xcel and/or its agents and/or employees failed to warn users of its natural gas, including the Strohns and the Strohn Cabin, about such dangers and problems.

70.     Xcel and/or its agents and/or employees has continued to design, manufacture, distribute, supply, transmit, and/or deliver, as well as market, natural gas since it sold, distributed, and delivered the natural gas that caused the fire in the Strohn Cabin to the Strohns and the Strohn Cabin.

71.     After Xcel and/or its agents and/or employees sold, distributed, and delivered such natural gas to the Strohns and the Strohn Cabin, Xcel and/or its agents and/or employees undertook a duty, but ultimately breached that duty, to warn users of the dangers and problems with its natural gas.

## COUNT FIVE:
## NEGLIGENCE CLAIM AGAINST XCEL

72.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 71 of her Complaint as if fully set forth again.

73.     The fire, the resulting injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin were a direct and proximate result of the negligence of Xcel and/or its agents and/or employees, and each of them, which consisted of, but is not limited to, one or more of the following actions and/or omissions:

(a)  Failing to use reasonable care to properly and safely design, manufacture, distribute, supply, transmit, and deliver the natural gas;

(b)  Failing to use reasonable care to provide adequate and/or proper warnings and/or instructions about the natural gas, including, but not limited to, providing adequate and/or proper warnings and/or instructions about the dangers of leaking natural gas, the dangers of natural gas if it does not have an odorant or is unable to be detected, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas;

(c)  Failing to warn the Strohns and the Strohn Cabin of the dangers of the natural gas, including, but not limited to, the dangers of leaking natural gas, the dangers of natural gas without an odorant, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas;

(d)   Failing to properly add, mix, and/or design, and/or otherwise ensure there was, a proper and sufficient odorant to the natural gas;

(e)   Failing to properly inspect the natural gas, including, but not limited to, to ensure it was properly and/or sufficiently odorized;

(f)   Failing to properly inspect Xcel's equipment and the Strohn Cabin to ensure its equipment and the gas lines in the Strohn Cabin were not defective, unsealed, uncapped, and/or unsafe for the use of natural gas for and/or in the Strohn Cabin;

(g)   Failing to lockout-tagout the Gas Line and/or the gas equipment delivering natural gas for and/or into the Strohn Cabin;

(h)   Failing to depressurize, turn off, and/or otherwise prevent natural gas from entering the Strohn Cabin;

(i)   Designing, manufacturing, distributing, supplying, transmitting, and/or delivering the natural gas in such a way as to endanger the safety and wellbeing of the Strohns and users of the Strohn Cabin;

(j)   Designing, manufacturing, distributing, supplying, transmitting, and/or delivering the natural gas in such a way that did not comply with state, federal, and/or industry laws, regulations, and/or standards; and/or

(k)   Failing to otherwise use reasonable care to ensure that natural gas was not leaking, and would not leak, from the Gas Line.

74.   Xcel is vicariously liable for the negligence of its employees and/or agents, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

75.   Xcel Energy, NSPC, NSPC-M, and NSPC-W are vicariously liable for each other's negligence, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

## COUNT SIX:
## NEGLIGENCE PER SE CLAIM AGAINST XCEL

76.   Mrs. Strohn hereby reincorporates Paragraphs 1 through 75 of her Complaint as if fully set forth again.

77.   Certain State and federal laws, regulations, and/or standards, including, but not limited to, 49 CFR § 192.625, govern the designing, manufacturing, distributing, supplying, transmitting, and/or delivering of natural gas to consumers like the Strohns and residences like the Strohn Cabin.

78.     These State and federal laws, regulations, and/or standards are, among other things, intended to protect such consumers and residences from the dangers of natural gas.

79.     Xcel and/or its agents and/or employees violated State and/or federal laws, regulations, and/or standards governing natural gas, including, but not limited to 49 CFR § 192.625, by, among other things, failing to properly add, mix, and/or design, and/or otherwise ensure there was, a proper and sufficient odorant to the natural gas that caused the fire in the Strohn Cabin.

80.     Xcel's and/or its agents' and/or employees' violation of such State and/or federal laws, regulations, and/or standards directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

81.     At all material times, the Strohns belonged to the class of persons that such State and/or federal laws, regulations, and/or standards were intended to protect.

82.     The harm and damages that the Strohns have suffered due to such violations are of the nature and type that such laws, regulations, and/or standards were intended to prevent.

83.     Xcel is vicariously liable for the negligence of its employees and/or agents, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

84.     Xcel Energy, NSPC, NSPC-M, and NSPC-W are vicariously liable for each other's negligence, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

## <u>COUNT SEVEN:</u>
## <u>NON-PRODUCT LIABILITY FAILURE TO WARN CLAIM AGAINST XCEL</u>

85.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 84 of her Complaint as if fully set forth again.

86.     The fire, the resulting injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin were a direct and proximate result of Xcel's and/or its agents' and/or employees' (and each of them) negligent failure to warn the Strohns and the Strohn Cabin about the dangers of the natural gas, including, but not

limited to, the dangers of leaking natural gas, the dangers of natural gas without an odorant, under which circumstances a natural gas leak may not be detected, and the precautions to take to prevent or mitigate the dangers of natural gas.

87.     Xcel is vicariously liable for the negligence of its employees and/or agents, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

88.     Xcel Energy, NSPC, NSPC-M, and NSPC-W are vicariously liable for each other's negligence, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

## **COUNT EIGHT:**
## **BREACH OF EXPRESS WARRANTY CLAIM AGAINST XCEL**

89.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 88 of her Complaint as if fully set forth again.

90.     Xcel and/or its agents and/or employees expressly represented, stated, and warranted to the Strohns that its natural gas was safe and fit for its intended purpose to supply gas to and for the Strohns and the Strohn Cabin.

91.     At all material times, the Strohns decided to use Xcel's natural gas based upon the statements, representations, and warranties of Xcel and/or its agents and/or employees that the natural gas was safe and fit for its intended purpose to supply gas to and for the Strohns and the Strohn Cabin.

92.     The Strohns reasonably relied upon the representations, statements, and warranties that Xcel's natural gas was safe and fit for its intended purpose to supply gas to and for the Strohns and the Strohn Cabin.

93.     Xcel and/or its agents and/or employees breached their representations, statements, and warranties to the Strohns by selling and delivering to them and to the Strohn Cabin natural gas that was dangerous and defective.

94.     Within a reasonable time after the Strohns discovered this breach, they gave Defendants notice of the breach.

95.     Xcel's, and/or its agents' and/or employees', breach of such express representations, statements, and warranties directly and proximately caused the fire in

the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin

## COUNT NINE:
## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY CLAIM AGAINST XCEL

96.     Mrs. Strohn hereby reincorporates Paragraphs 1 through 95 of her Complaint as if fully set forth again.

97.     At all material times, Xcel was a merchant with respect to natural gas.

98.     At the time that Xcel sold, distributed, and delivered the natural gas that caused the fire to the Strohns and the Strohn Cabin, such natural gas was not merchantable because, among other reasons, it was dangerous, unsafe, and not fit for its ordinary purposes of supplying gas for residential use.

99.     Within a reasonable time after the Strohns discovered Xcel's breach of the implied warranty of merchantability, they gave Defendants notice of the breach.

100.    Xcel's breach of the implied warranty of merchantability directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

## COUNT TEN:
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR PARTICULAR PURPOSE CLAIM AGAINST XCEL

101.    Mrs. Strohn hereby reincorporates Paragraphs 1 through 100 of her Complaint as if fully set forth again.

102.    When the Strohns purchased the natural gas from Xcel, the Strohns purchased such natural gas for the purpose of using it for their use and for the operation and use of the Strohn Cabin, and Xcel knew or had reason to know about these particular operations and uses.

103.    When the Strohns purchased the natural gas from Xcel, the Strohns were relying on Xcel's skill and/or judgment to furnish natural gas that was suitable, safe, and fit for the Strohns' use and for the operation and use of the Strohn Cabin, and Xcel knew or had reason to know this information.

104.   At the time that Xcel sold, distributed, and delivered the natural gas that caused the fire to the Strohns and the Strohn Cabin, such natural gas was not suitable, safe, and fit for the Strohns' use or for the operation and use of the Strohn Cabin.

105.   Within a reasonable time after the Strohns discovered that Xcel's natural gas was not suitable, safe, and fit for their use or for the operation and use of the Strohn Cabin, the Strohns gave Xcel notice of its breach of the implied warranty of fitness for a particular purpose.

106.   Xcel's breach of the implied warranty of fitness for a particular purpose directly and proximately caused the fire in the Strohn Cabin, the injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin.

**COUNT ELEVEN:**
**NEGLIGENCE CLAIM AGAINST**
**HOME DEPOT, XPO LOGISTICS, and GARAN**

107.   Mrs. Strohn hereby reincorporates Paragraphs 1 through 106 of her Complaint as if fully set forth again.

108.   The fire, the resulting injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin were a direct and proximate result of the negligence of Home Depot, XPO Logistics, and Garan and/or their agents and/or employees, and each of them, which consisted of, but is not limited to, one or more of the following actions and/or omissions:

(a)   Failing to properly and safely disconnect the gas stove from the Gas Line;

(b)   Failing to cap, seal, close, and/or otherwise neutralize the Gas Line after they disconnected the gas stove from the Gas Line;

(c)   Failing to warn the Strohns that the Gas Line was uncapped, unsealed, not closed, or otherwise neutralized;

(d)   Failing to properly inspect the gas equipment and the gas lines in and for the Strohn Cabin to ensure they were not defective, unsealed, uncapped, and/or unsafe for the use of natural gas in and for the Strohn Cabin;

(e)   Failing to lockout-tagout the Gas Line and/or the gas equipment delivering natural gas for and/or into the Strohn Cabin;

(f)   Failing to depressurize, turn off, and/or otherwise prevent natural gas from entering the Strohn Cabin;

(g)  Failing to be trained in how to properly and safely disconnect equipment from gas piping, including, but not limited to, how to properly and safely cap, seal, close, or otherwise neutralize gas lines;

(h)  Violating state, federal, and/or industry laws, regulations, and/or standards concerning natural gas, including, but not limited to, natural gas use, transmission, and distribution; and/or

(i)  Failing to otherwise use reasonable care to ensure that natural gas was not leaking, and would not leak, from the Gas Line.

109.  Home Depot, XPO Logistics, and Garan are vicariously liable for the negligence of each other and/or their employees and/or agents, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior.*

## COUNT TWELVE:
## NEGLIGENCE CLAIM AGAINST PLOOG ELECTRIC

110.  Mrs. Strohn hereby reincorporates Paragraphs 1 through 109 of her Complaint as if fully set forth again.

111.  The fire, the resulting injuries and death of Mr. Strohn, and the property damages to and inside of the Strohn Cabin were a direct and proximate result of the negligence of Ploog Electric and/or its agents and/or employees, which consisted of, but is not limited to, one or more of the following actions and/or omissions:

(a)  Failing to cap, seal, close, and/or otherwise neutralize the Gas Line;

(b)  Failing to warn the Strohns that the Gas Line was uncapped, unsealed, not closed, or otherwise neutralized;

(c)  Failing to properly inspect the gas equipment and the gas lines in and for the Strohn Cabin to ensure they were not defective, unsealed, uncapped, and/or unsafe for the use of natural gas in and for the Strohn Cabin;

(d)  Failing to lockout-tagout the Gas Line and/or the gas equipment delivering natural gas for and/or into the Strohn Cabin;

(e)  Failing to depressurize, turn off, and/or otherwise prevent natural gas from entering the Strohn Cabin;

(f)  Failing to be trained in how to properly and safely cap, seal, close, or otherwise neutralize gas lines;

(g)  Violating state, federal, and/or industry laws, regulations, and/or standards concerning electricity and natural gas, including, but not limited to, electricity and natural gas use, transmission, and distribution; and/or

(h) Failing to otherwise use reasonable care to ensure that natural gas was not leaking, and would not leak, from the Gas Line.

112. Ploog Electric is vicariously liable for the negligence of its employees and/or agents, including, but not limited to, under the doctrines of all theories of agency and/or *respondeat superior*.

## SECOND CAUSE OF ACTION:
## SURVIVAL CLAIM AGAINST ALL DEFENDANTS

113. Mrs. Strohn hereby reincorporates Paragraphs 1 through 112 of her Complaint as if fully set forth again.

114. Mrs. Strohn's second cause of action against Defendants is a survival claim against Defendants.

115. After the fire on May 20, 2017, Mr. Strohn passed away on June 9, 2017, due to his injuries from the fire.

116. Mr. Strohn survived for nearly three weeks after the fire before succumbing to his injuries from the fire.

117. Mr. Strohn incurred substantial medical, hospital, and other expenses; injuries; and damages, including, but not limited to, severe mental and physical pain, suffering, anguish, and emotional distress, before he passed away on June 9, 2017.

118. With regard to Mrs. Strohn's survival claim against Defendants, she hereby asserts and incorporates herein the above 12 counts / claims / legal theories against the particular Defendant(s) to which such counts / claims / legal theories are directed.

119. The damages Mrs. Strohn seeks against such Defendants on her survival claim are identified in Paragraphs 125 and 126, including all subparagraphs therein, of her Complaint and are incorporated herein by this reference.

## THIRD CAUSE OF ACTION:
## MRS. STROHN'S INDIVIDUAL PROPERTY DAMAGE
## CLAIM AGAINST ALL DEFENDANTS

120. Mrs. Strohn hereby reincorporates Paragraphs 1 through 119 of her Complaint as if fully set forth again.

121. Mrs. Strohn's third cause of action against Defendants is a claim for the property damage she suffered due to the fire.

122.   With regard to such claim and Mrs. Strohn's third cause of action against Defendants, Mrs. Strohn hereby asserts and incorporates herein the above 12 counts / claims / legal theories against the particular Defendant(s) to which such counts / claims / legal theories are directed.

123.   The damages Mrs. Strohn seeks against such Defendants on her third cause of action against Defendants are identified in Paragraphs 125(d) and 126 of her Complaint and are incorporated herein by this reference.

## DAMAGES COMMON TO ALL CAUSES OF ACTION
## AND COUNTS IN PLAINTIFF'S COMPLAINT

124.   Mrs. Strohn hereby reincorporates Paragraphs 1 through 123 of her Complaint as if fully set forth again.

125.   As a direct and proximate result of the designing, manufacturing, and warning defects with regard to the natural gas, as well as the actions and/or inactions, the negligence, and the breaches of warranties of Defendants and/or their agents and/or employees, and each of them:

(a)   Mrs. Strohn and Mr. Strohn's next-of-kin have suffered and will continue to suffer all wrongful death damages provided under the law, including, but not limited to, emotional distress, loss of financial support, and the loss of Mr. Strohn's society, comfort, companionship, services, support, earnings, consortium, counsel, guidance, care, love, affection, attention, protection, aid, and assistance;

(b)   Mrs. Strohn, Mr. Strohn, and/or Mr. Strohn's next-of kin have incurred and/or will incur healthcare, medical, hospital, funeral, and burial expenses and services, as well as the past and future loss of Mr. Strohn's earnings, earning capacity, and wages;

(c)   Mr. Strohn experienced physical and mental pain, suffering, anguish, emotional distress, disability, disfigurement, and embarrassment; passed away, and lost the enjoyment of the rest of his life; and

(d)   Mrs. Strohn, Mr. Strohn, and/or Mr. Strohn's next-of-kin have incurred property damage, including, but not limited to, property damage to the Strohn Cabin and damage to personal property inside the Strohn Cabin.

126.   The amount of the damages that Mrs. Strohn, Mr. Strohn, and Mr. Strohn's next-of-kin have sustained exceeds the sum of $75,000, exclusive of interest and costs.

WHEREFORE, Mrs. Strohn prays for Judgment against Defendants on her First, Second, and Third Causes of Action for the general and special damages that Mrs. Strohn, Mr. Strohn, and Mr. Strohn's next-of-kin have sustained and/or will sustain; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and such further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff prays for a trial by jury on all matters raised herein in the United States District Court located in Minneapolis, Minnesota.

Dated this 29th day of June, 2018.

SUSAN F. STROHN, Individually, as Special Administrator of the ESTATE OF STEVEN C. STROHN, Deceased, and as Trustee for the Next of Kin of STEVEN C. STROHN, Decedent, Plaintiff

By:     /s/ *David J. Stubstad*
         Michael F. Coyle, NE Bar #18299
         David J. Stubstad, MN Bar #41064
         Jordan W. Adam, NE Bar #23723
         FRASER STRYKER PC LLO
         500 Energy Plaza
         409 South 17th Street
         Omaha, NE 68102
         (402) 341-6000 (telephone)
         (402) 341-8290 (facsimile)
         mcoyle@fraserstryker.com
         dstubstad@fraserstryker.com
         jadam@fraserstryker.com
         ATTORNEYS FOR PLAINTIFF

10875-57734/1910674